43    423
96    439

------◆------

# THE MERCANTILE INS. COMPANY v. ROSE MORLEY HOLTHAUS.

*Fire insurance—proofs of loss—assignment of claims.*

An insurer's neglect to object within a reasonable time to proofs of loss where the defects in them could be remedied if intelligibly pointed out, amounts to a waiver; the question whether he has acted in good faith and seasonably is for the jury.

Where defects in the proofs of loss of insured property are found to have been waived, any objection to the certificate attached to

the proofs is disposed of by the verdict, and presents no legal question.

Separate interests held by several persons under the same policy of insurance, may be united by the assignment of the policy to one individual who may bring suit upon it.

Where each of several persons assured by the same policy have distinct insurable interests, they can enforce their rights under the policy in equity if they cannot at law.

Error to Ingham. Submitted April 22. Decided April 28.

ASSUMPSIT on insurance policy. Defendant brings error.

*Cowles & Cahill* for plaintiff in error.

*M. V. & R. A. Montgomery* for defendant in error.

GRAVES, J. The defendant in error sued as assignee of Matilda Morley and Mary L. Ayers to recover a loss which they suffered under a policy of fire insurance issued by the company to them September 17, 1877. She recovered in the court below and the case comes up on exceptions. The assured were mother and daughter, and being widows they lived together in the same house. The subject of insurance was personal property consisting of household furniture, provisions, clothing apparel, and other articles, and some of it they owned in severalty. The fire occurred on the 6th of December, 1877, and preliminary proofs of loss were forwarded on the 17th. On the 14th of January following the company returned objections. They were that the proofs were "incomplete and imperfect, having been verified and subscribed to by Mary L. Ayers only, who is incompetent to make proofs of loss as to value and loss sustained to the personal of Matilda Morley;" and further that the proofs did "not bear the certificate of a magistrate, notary public, or commissioner, as is required by the conditions of said policy of insurance."

In communicating these objections, which were the only exceptions taken, it was stated that no liability was then denied or admitted and that the company reserved

to itself any and all rights it had under and by virtue of the policy and the conditions thereto attached. In the interval between the forwarding of these first proofs and this reply the assured transferred their claim to defendant in error. Soon after the reception of the objections to the proofs, negotiations were opened between the parties for an amicable adjustment, and were continued during the season. The company throughout these efforts however persisted in the claim that it was not liable, and averred that in seeking to effect an arrangement it was influenced by a desire for peace. The attempt proving unsuccessful, the defendant in error on the 20th of September forwarded new proofs of loss to the company's office at Cleveland, in the State of Ohio.

By the terms inserted in their policy the payment of loss could not be required until the lapse of sixty days from the reception of complete proofs of loss at the office of the company, and another stipulation put in declared that no suit upon the policy should be maintained unless commenced within the term of twelve months next after the loss.

These provisions were incorporated in the policy as conditions the company had the right to insist upon and did insist upon. As the fire took place on the 6th of December, 1877, the twelve months for bringing suit would expire in the fore part of the approaching December, and at the time of sending the second proofs in September there remained only about seventy-five days, and hence only about fifteen days beyond the term reserved to the company within which to make payment after complete proof of loss.

The provision relative to a certificate, to which reference was made, required the assured to produce "the certificate under seal of a magistrate, notary public, or commissioner of deeds nearest the place of the fire, and not concerned in the loss or related to the assured, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the

assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount claimed by the said assured."

No certificate accompanied the proofs first made, but those sent the 20th of September contained one as follows:

"I, Augustus F. Weller, a justice of the peace residing in the city of Lansing, Michigan, most contiguous to the property hereinbefore described, hereby certify that I am not concerned in the loss or claim above set forth, either as a creditor or otherwise, or related to the insured or sufferers; that I have examined the circumstances attending the fire, or damage, as alleged, and that I am well acquainted with the character and circumstances of the insured, and do verily believe that they have by misfortune, and without fraud or evil practice, sustained loss and damage on the property insured to the amount of two thousand five hundred dollars.

"In testimony whereof I have hereunto set my hand and official seal this 18th day of September, A. D. 1878."

Then followed the magistrate's name and seal.

The assured and assignee united in making these proofs. The company retained these papers until the 28th of October, more than a month, without signifying dissatisfaction or suggesting any defect. There remained only thirty-eight days of the twelve months which the company had fixed as the limitation for commencing suit; and assuming, for the purpose of this case, which is entirely proper, that the company was committed to this stipulation as one completely binding on the assured, and it is apparent that a portion of the sixty days reserved as a fixed term of credit had elapsed. There was no longer, on this supposition, any time left for completing preliminary proofs. The company had not only delayed the notification of dissatisfaction with the papers for the two weeks which the limitations permitted without prejudice to the assured, but for a sufficient time beyond to disable the latter, according to the claims made by the company through the terms of the policy, from doing anything to obviate objections.

At that late day a series of objections was tendered. The only one calling for present notice relates to the

certificate.   It stated "that the justice of the peace making certificate, under seal, is not the magistrate, notary public or commissioner of deeds nearest the place of the fire, as required by the conditions of the policy; and as we verily believe, from information, does not know and has not examined into the circumstances of the said fire, the amount of said loss or the character of the claimants."

The discussion under this objection is confined to the first branch of it.   The latter portion was fully disposed of before the jury, and is not questioned.   The position taken by the counsel for the company is that in fact the justice was not the nearest to the fire, and that the condition being one precedent to the right of action, the defect is fatal to the cause.   It is not needful to consider in the abstract what real force such stipulations possess.   It was admitted on the trial that in fact the magistrate, Mr. Weller, resided and kept office a block further from the fire than another magistrate named, and that there were notaries public nearer than either; and the circuit judge instructed the jury that the policy gave the company a right to insist upon a certificate from the magistrate, notary public or commissioner nearest to the fire.   The defendant in error contended that the evidence required a finding that the objection was not open to the company, and it is manifest from the charge that the judge considered the case must be determined according as the jury should find on the facts contemplated by that theory.   He accordingly charged elaborately under that view.

The law is well settled that when any defects are found in the proofs of loss, capable of being remedied if intelligibly pointed out, a failure by the underwriters to make known the difficulty, or to call for the information omitted, when that is the infirmity, within a reasonable time, is deemed to be a waiver (Wood on Ins. 716 and cases), and the rule is believed to be without exception that the insurer must object seasonably if at all.   He must act in good faith, openly, frankly and distinctly, and make his objections known within a rea-

sonable time; "and whether he has done so or not in a given case, is a question for the jury." Wood on Ins. 718 and cases cited.

There was much evidence at the trial bearing on this question. There were the negotiations protracted through the season, the somewhat blind form of the objections, and the neglect to point them out in the certificate for more than a month, and not until the defendant in error was entitled to infer from the policy that no time was left to obviate the objections.

Had the exception to the magistrate been at once notified, or had the company offered sufficient time, new and precise proceedings might have been taken. But neither was done. Under the charge, which was very fair, the jury must have found that the objection to the certificate was not open, and that all right to defend on account of the shape of the certificate or the incompetency of its author was waived. The point was therefore disposed of by the verdict.

It appeared on the face of the policy that some of the property was held in severalty. The description implied it, and the agent knew it. There was no fraud about it. Each of the assured had an insurable interest, and if the form of the contract presented insuperable impediments to the enforcement at law of their separate rights—a point which is not examined—the parties were not without remedy. A court of equity, if necessary, could have entertained the case and protected the rights of all. The inability of the assured to sue at law jointly, in case such inability existed, is no answer to the suit by their assignee. It is every day's experience to see separate and independent interests, whether arising from one paper or many, united by assignment in one ownership, and the sole object is often no other than to save a multiplicity of suits.

The amendment of the declaration was matter of discretion, and there is not the least ground for contending that the discretion was improperly exercised.

What has been said disposes of all the points insisted on, and as no error is shown, the judgment must be affirmed with costs.

The other Justices concurred.