ROOT *v.* BEYMER.

1. EXECUTORS AND ADMINISTRATORS—DUTIES—TENURE OF OFFICE.
   The functions of an executor or administrator do not necessarily cease upon a final settlement and approval of his account, but he may, if occasion arises, pursue his duties further for the benefit of the estate, unless the probate records show a formal discharge from the trust.

2. ASSIGNMENTS—VALIDITY—BLANK—TAX SALE CERTIFICATES.
   Proof of the execution of a formal assignment of tax sale certificates to which the certificates were not attached and in which the name of the assignee, the numbers of the certificates, and the years for which the sales were made, were left blank, together with the fact that after the assignor's death certificates were found in the possession of a person other than him to whom the assignment was delivered, does not prima facie prove an assignment of the certificates.

3. WITNESSES—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED.
   On the issue whether certain tax sale certificates in defendant's possession belonged to him or the estate of plaintiff's testator, testimony by defendant that before the execution of a certain blank assignment of tax sale certificates he had seen a power of attorney signed by decedent providing for dealing in such certificates, is incompetent under Act No. 30, Pub. Acts 1903.

Error to Oakland; Smith, J. Submitted October 16, 1906. (Docket No. 86.) Decided December 21, 1906.

Trover by Elizabeth Root, administratrix with the will annexed of the estate of Tracy W. Root, deceased, against Charles E. Beymer and Cyrus Johnston. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Affirmed.

*McIntyre & Wheeler*, for appellants.

*R. S. Woodliff*, for appellee.

BLAIR, J.    Elizabeth Root brings this action as administratrix with the will annexed of the estate of Tracy W. Root, for the wrongful conversion by defendants of the amount of a refund, due upon the cancellation of certain tax sales by the auditor general, and paid to the defendant Beymer.    Both parties claim through Tracy W. Root, who, at a tax sale by the treasurer of Wayne county in 1865, purchased certificates of tax sale property No. 268 and No. 347 for the years 1862 and 1864.

Plaintiff claims the fund in her representative capacity. Defendants claim through an alleged assignment by Tracy W. Root to one Welsh; by Welsh to defendant Johnston and by Johnston to defendant Beymer for purposes of collection.    The alleged assignment to Welsh was duly executed and acknowledged before a notary public, and delivered to Welsh on the 11th day of February, 1874. The body of the assignment was as follows:

"For the valuable consideration to me in hand paid, the receipt whereof is hereby acknowledged, I do these presents assign, transfer, and set over to ——— all my claim, right, title and interest in and to the within certificate of tax sale property ——— issued by the treasurer of Wayne county for the years ———."

Tracy W. Root died in 1884 or 1885.    Some time in the 80's, and, as stated by defendants' counsel in the circuit court, after Root's death, the two certificates and the blank assignment were delivered by Welsh to defendant Johnston.    The auditor general canceled the sale in 1900, and in 1901 defendant Johnston, having learned of the cancellation, filled in the first blank in the assignment with the name of " C. E. Beymer;" the second blank with certificate numbers, " 268 and 347;" the third blank with the years "1862 and 1864;" attached the two certificates to the assignment, and forwarded them with an application for refund to the auditor general in the name of C. E. Beymer.    Defendant Johnston testified as to the assignment:

"I filled that out at the time I sent it to the auditor

general's office. I don't know whether I made any erasures upon the paper before filling in the name of year's taxes. I do not know whether I rectified the number of tax certificates by erasing and writing in others. I do not know whether or not I erased the paper previous to writing in the name of Beymer. The assignment was not attached to anything. ' They were delivered as separate certificates."

At the close of the testimony, the court directed a verdict for the plaintiff.

Counsel for defendants allege that the circuit judge erred in directing a verdict for the plaintiff for the following reasons:

"(1) There is no evidence that establishes the right of Elizabeth Root, the present plaintiff, to sue in the capacity of executrix of Tracy W. Root.

"(2) The assignment made by Tracy W. Root to James Welsh is valid and binding upon the parties thereto.

"(3) Elizabeth Root, suing in behalf of Tracy W. Root, even as his representative, is in precisely the same position, so far as her legal rights are concerned, as Tracy W. Root would be were he plaintiff, and Tracy W. Root having either bought the certificates in question with money furnished by James Welsh, or having purchased the certificates with his own money, and having sold them to James Welsh, and received therefor a valuable consideration, which consideration he kept and converted to his own use, is now estopped from setting up any formal defects that may appear in the assignment by which he invested the title to said certificates in James Welsh.

"(4) That the death of Tracy W. Root did not revoke the implied authority of Root's assignee or the assignee of Root's assignee, which authority consisted in the liberty to fill in the blank in such assignment whenever such assignee saw fit to do so, as such implied agency was coupled with an interest, and thus bringing it squarely within the one well-recognized exception to the rule that death of the principal revokes the authority of the agent."

1. "The functions of an executor or administrator do not necessarily cease upon a final settlement and approval of his account, but he may, if occasion arises, pursue his duties further for the benefit of the estate, unless the pro-

bate records show a formal discharge from the trust."
18 Cyc., p. 146, and cases cited in note.

2. There is no evidence in the record that the two certificates were ever delivered to Welsh, except the testimony of defendant Johnston that Welsh had the certificates in his possession after the death of Root, and delivered them to him separate from the assignment. Judge Kinne, who, as notary public, took Root's acknowledgment to the blank assignment, testified:

"I do not know whether or not there have been any changes made in the paper. It does seem to have been disturbed somewhat. I do not know what has been done with it. I could not say as to whether it is in the same condition it was when I signed it as notary public. I have no distinct remembrance about this paper whatever. All I recognize are the signatures—my own and that of Mr. Root and the witness. I do not know whether or not it was attached to other papers at the time I took the acknowledgment."

These certificates showed upon their face that Tracy W. Root had purchased the parcels of land described therein and "that the said purchaser will, after one year from date (October 2, 1865), be entitled to the conveyance of the premises aforesaid upon presentation and delivery of this certificate," etc. There was no indorsement by Root of these certificates indicating an intention to transfer them to the holder, as in the cases cited by counsel for defendants, nor was there any evidence that Welsh furnished the money to Root to purchase these particular certificates. The assignment, relied upon to obtain the draft from the auditor general, never was executed by Root. As the paper left his hand, it identified nothing. It was no more than a piece of blank paper signed and acknowledged by him. An indorsement by Root of the certificates in blank might evidence his intention to assign to the holder his interest in the certificates, as in *Swan* v. *Whaley*, 75 Iowa, 623, but in the case before us there is no evidence in the record to indicate that Root ever sold the certificates to Welsh, or intended to sell them to him.

The mere fact that Welsh had Root's certificates in his possession after the death of Root is not, of itself, proof of ownership, and the case is barren of evidence tending to show that the possession of Welsh was that of an owner. Defendants' case, so far as title to the certificates is concerned, must rest upon the possession of Welsh and the so-called assignment, which do not furnish even prima facie evidence of ownership. If the assignment had been attached to the certificates, a very different case would have been made. But it was not, and the evidence, so far as it goes, is quite persuasive that the assignment was originally attached to other certificates and changed to apply to the certificates in question here. The testimony of defendant Johnston that he did not know whether he erased the name of the original assignee, the numbers of the certificates, and the years for the taxes of which the lands were sold, and then filled in the blanks as they now appear is, to say the least, not calculated to inspire confidence in the regularity of the assignment. Until there was some testimony tending to show that Welsh was the owner of the certificates, his transfer to defendant Johnston could possess no validity.

The testimony of defendant Johnston that before the transfer to him he had seen a power of attorney in Welsh's possession signed by Root and stating "that Mr. Welsh had furnished money to Mr. Root and that titles were to be bought; titles were bought in his name, were turned over to Mr. Welsh and that assignments were to be given in blank and witnessed for the purpose so that he could fill in the certificate numbers and the amount and the names from time to time as he would dispose of them," was properly rejected by the court as being within the prohibition of section 10212 of the Compiled Laws of 1897 as amended by Act No. 30 of the Public Acts of 1903. Even if the testimony were competent, it would not help the defendants, since Welsh never did fill in the blanks, and no one else was authorized to do so by the instrument.

3. There is no competent evidence tending to show that Root bought the certificates with money furnished by Welsh, nor that he sold them to Welsh, and received a valuable consideration for them. In fact, there is no competent evidence that Root sold the certificates at all.

What we have said disposes of the case. We think that plaintiff made out a prima facie case against both defendants, and the judgment is affirmed.

CARPENTER, C. J., and McALVAY, GRANT, and MOORE, JJ., concurred.